**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OSCAR D. TORRES, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS W. HARKER, UNITED STATES SECRETARY OF THE NAVY (ACTING), UNITED STATES OF AMERICA, in his official capacity,<br><br>Defendant. | Civil Action No. _____<br><br><br>**COMPLAINT** |

**CLASS ACTION COMPLAINT FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**

## I.     NATURE OF THE ACTION

1.      Plaintiff, Oscar D. Torres, on behalf of himself and all others similarly situated, brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, to address the failure of Defendant, the Secretary of the Navy of the United States of America, acting by and through the Department of the Navy, to comply with applicable law and U.S. Department of Defense regulations.

2.      Plaintiff and the members of the class he represents are former members of the U.S. Navy and Marine Corps who were (a) separated from military service for medical conditions that rendered them unfit for continued military service, and (b) were barred by Navy policy from having all of their potentially unfitting conditions evaluated by the Physical Evaluation Board ("PEB").

3.      Through this action, Plaintiff challenges the Director of the Secretary of the Navy Council of Review Boards' "Properly Referred Policy," as detailed in Paragraphs 41-57, *infra*, and

implemented and enforced by the Navy in making determinations whether a Sailor or Marine was unfit for continued active duty service under Chapter 61 of Title 10 of the U.S. Code, 10 U.S.C. § 1201, *et seq.*, from September 12, 2016, until June 11, 2018, as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and without observance of procedures required by law.

4.     Namely, this "Properly Referred Policy" injured Plaintiff and similarly situated Service members by requiring Navy PEB members to review only those conditions that were submitted to a PEB in the specific manner set forth in this policy.  For years, the Program Manager for the Navy Disability Evaluation System Counsel Program decried the policy as "wrong" and "contrary to both law and regulation," calling the policy a "an ultra vires attempt to restrict rights of wounded, ill, or injured wounded warriors."  Memorandum from the Program Manager, Disability Evaluation System Counsel Program, Legal Objection to SECNAVCORB Policy Letter 2017-4 ¶ 12 (Nov. 29, 2017) (attached as Exhibit 1) ("2017 Legal Objection").  The Program Manager further argued that the Properly Referred Policy "unlawfully narrow[ed] the scope of information required to be considered" when reviewing wounded warrior cases.  Memorandum from the Program Manager, Disability Evaluation System Counsel Program, Legal Objection to SECNAVCORB Properly Referred Policy ¶ 5 (Jan. 29, 2018) (attached as Exhibit 2) ("2018 Legal Objection") ¶ 5.[1]  Put differently, the policy was labeled "inexplicable" as it forced the PEB "to cover their eyes and ears even when unambiguous evidence of a significant medical condition [was] presented to it."  *Id.* ¶ 9.

5.     As a result of the Properly Referred Policy, Plaintiff and the members of the class were improperly and unlawfully denied the opportunity to qualify for military medical retirement

---

[1] The Supplemental Authority for the 2018 Legal Objection is also attached hereto as Exhibit 3.

because they suffered from one or more medical conditions that the PEB wrongly refused to fully consider in determining whether the Sailor or Marine was unfit for continued military service. Navy personnel themselves found an "unfortunate reality" where many conditions were "willfully ignored," and, as a result, "wounded warriors, including many with significant mental health and debilitating injuries, are not receiving the benefits to which they are lawfully entitled."  2017 Legal Objection ¶ 10.   The Program Manager for the Navy Disability Evaluation System Counsel Program put it bluntly: the Properly Referred Policy "will be a stain on the [Department of the Navy] for years to come" as it "has resulted in the PEB knowingly disregarding numerous diagnosed conditions of our Nation's wounded, ill, or injured Service members."  2018 Legal Objection ¶ 11.

      6.     On behalf of himself and those similarly situated, Plaintiff asks the Court:

      a.     to declare that:(1) the Director of the Secretary of the Navy Council of Review Boards' "Properly Referred Policy," as implemented and enforced from September 12, 2016, until June 11, 2018, violated statutory law and binding DoD Instructions, including 10 U.S.C. § 1216a(b) and DoDI 1332.18; and (2) the Director of the Secretary of the Navy Council of Review Boards' actions thereunder in making fitness determinations for Plaintiff and the class were arbitrary, capricious, an abuse of discretion, and not in accordance with law; and

      b.     to order that (1) the PEB's findings with respect to all conditions not found unfitting ("fit findings") be reassessed and the final combined disability rating decision for Plaintiff and class members be recalculated in replacement PEB proceedings, unless explicitly declined by the Service member, , as a result of the PEB's failure to follow the requisite procedures mandating it to evaluate and determine the fitness of all conditions, including those claimed on Section II or III

of the joint DoD/VA claim form (VA Form 21-0819) that were not listed on the NAVMED 6100/1 (s) ("non-referred conditions"); (2) Plaintiff and each member of the class be allowed during the replacement PEB proceedings to submit and develop evidence on any non-referred conditions; (3) a new Narrative Summary ("NARSUM") addendum be submitted to the PEB for Plaintiff and each class member adding one or more non-referred medical conditions; (4) the Director of the Secretary of the Navy Council of Review Boards conduct a new informal and, if requested, formal PEB evaluation for Plaintiff and Class Members with all the protections afforded under DoDI 1332.18 and SECNAVINST 1850.4E to reconsider *de novo* the fitness of all non-referred conditions; and (5) the Director of the Secretary of the Navy Council of Review Boards adopt the disability rating established by the Department of Veterans Affairs ("VA") at the time of discharge for each of Plaintiff's and class members' unfitting conditions, recalculate the combined disability rating for all unfitting conditions, and provide appropriate status determinations (i.e., disability retirement or disability severance) to Plaintiff and class members.  28 U.S.C. §§ 2201– 2202; 5 U.S.C. § 702.

## II.      JURISDICTION AND VENUE

7.      Plaintiff brings this putative class action pursuant to the APA.

8.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 because this case raises federal questions under the laws governing the United States military and the APA.  10 U.S.C. § 1201(b); 5 U.S.C. §§ 701-706.

9.      Plaintiff seeks exclusively declaratory and other equitable relief.  *See* 5 U.S.C. § 702.  Plaintiff seeks an injunction requiring Defendant to conduct a new PEB evaluation on all

non-referred conditions for each Plaintiff *de novo* with consideration properly given to all of Plaintiff's respective mental and physical conditions, and any equitable relief flowing from that determination.

10.     An actual, justiciable controversy now exists between the class and Defendant, and the requested relief is proper under 5 U.S.C. §§ 701–706.

11.     In accordance with 28 U.S.C. § 2401, this action is brought within six years of the date that the Navy denied Plaintiff's and class members' claims.

12.     Venue is appropriate in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(e) because Defendant is an officer of the United States and because the acts or omissions giving rise to this lawsuit took place in the District of Columbia.  Venue also is proper under 5 U.S.C. § 703 because this is a court of competent jurisdiction.

13.     The Navy's disability rating determinations constitute final agency action for which there is no other adequate remedy in a court.  *See* 5 U.S.C. § 704.

### III.     PARTIES

14.     Plaintiff Oscar D. Torres served as an active duty Service member in the United States Marine Corps from February 10, 2013, until January 27, 2018, when he was honorably discharged from the military due to disability.  Mr. Torres had previously served on active duty from August 29, 2007, through August 28, 2011, and he also served in the Marine Corps Reserve between his two periods of active duty.

15.     Defendant Thomas W. Harker is the United States Secretary of the Navy (Acting), a statutory officer under 10 U.S.C. §8013.  Acting Secretary Harker is the head of the Department

of the Navy and is sued in his official capacity only.  This Complaint may interchangeably refer to the Defendant as the "United States," "Military," "Navy," or "Defendant."

## IV.    FACTUAL ALLEGATIONS

### A.    The Military Disability Evaluation System.

16.    Chapter 61 of Title 10 of the U.S. Code establishes the process through which the U.S. Armed Forces may discharge disabled Service members.  It authorizes the Secretaries within the Department of Defense, including the Secretary of the Navy, to discharge, or separate, those Service members determined to be "unfit" to perform the duties of their office, grade, rank, or rating, due to physical or mental disability.

17.    The Department of Defense has implemented these statutory requirements through U.S. Department of Defense Instruction ("DoDI") 1332.18,[2] which establishes the Disability Evaluation System ("DES") and prescribes the overarching standards and procedures for conducting physical and mental disability evaluations.  The Navy, in turn, has issued its own regulations detailing the procedures used to evaluate and adjudicate disability cases.  *See* Department of the Navy, Secretary of the Navy Instruction ("SECNAVINST") 1850.4E, *Department of the Navy Disability Evaluation Manual*.[3]

18.    The DES process begins when a Service member's commander, the commander of the medical treatment facility treating the Service member, or the Service member's individual

---

[2] To facilitate the Court's review, Plaintiff has prepared a list of acronyms used in the military disability evaluation system and this Complaint as Exhibit 4, attached hereto.

[3] SECNAVINST 1850.4E was in effect during the period of the Properly Referred Policy. Subsequently, the Navy has adopted SECNAVINST 1850.4F.

medical or dental officer refers the Service member for medical evaluation.  *See* SECNAVINST 1850.4E, Enclosure 3, Part 1, § 3106.  A Service member cannot self-refer to the DES.

19.   The DES consists of several stages of evaluation and review that result in a final fitness determination and disability rating for a Service member.

20.   In the first stage, a Medical Evaluation Board ("MEB"), a body of physicians, is convened to evaluate the Service member's disability.  *See* DoDI 1332.18, Enclosure 2.

21.   The MEB is a "process designed to determine whether a Service member's long-term medical condition enables him/her to continue to meet medical retention standards, in accordance with military service regulations."[4]  The MEB also documents the Service member's full clinical history and the MEB's evaluation in a Narrative Summary ("NARSUM").  *See* DoDI 1332.18, Enclosure 3, § 2(d),(f).  When the MEB determines that a "… Service member cannot perform the duties of his office, grade, rank or rating the MEB refers the case to the (Physical Evaluation Board) PEB."  *Id.* § 2(d).

22.   The PEB is the sole forum responsible for determining a Service member's fitness for continued military service as a result of a physical or mental disability.  *Id.* at § 3(a).  The PEB is comprised of two separate boards — an Informal Physical Evaluation Board ("IPEB") and a Formal Physical Evaluation Board ("FPEB").  *Id.* § 3(b)–(c).

23.   Upon referral from the MEB, an IPEB, composed of two to three military personnel, is responsible for reviewing the evidence compiled by the MEB "… to make initial

---

[4] *Medical Evaluation Board*, Health.Mil (Last Visited: Nov. 30, 2020), https://www.health.mil/Military-Health-Topics/Conditions-and-Treatments/Physical-Disability/Disability-Evaluation/Medical-Evaluation

findings and recommendations (regarding a Service member's fitness) without the Service member present." *Id.* § 3(b).

24.    If the Service member disagrees with the findings of the IPEB, he or she can rebut the findings and request a personal appearance before a FPEB.  A hearing before the FPEB is authorized pursuant to Chapter 61 of Title 10 of the U.S. Code, which provides that "[n]o member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it."  10 U.S.C. § 1214.

25.    If the PEB finds that the Service member is unfit for continued military service, then the PEB must assign a disability rating from 0% to 100%, in increments of 10%, to each physical or mental condition found by the PEB to render the Service member unfit for continued military service.

26.    Title 10 of the U.S. Code and the rules of each of the service branches have long mandated that the service branches follow the Veterans Affairs Schedule for Rating Disabilities when assigning a disability rating to each of the physical and mental disabilities found by the PEB to render the Service member found unfit for continued active duty service.  *See* 10 U.S.C. §§ 1201, 1203; National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1642(a), 122 Stat 465, *codified at* 10 U.S.C. § 1216a.  If the PEB finds that two or more medical conditions render the Service member unfit for continued service, then the PEB assigns a combined disability rating using the combined disability rating criteria set forth in 38 C.F.R. § 4.25 of the Veterans Affairs Schedule for Rating Disabilities.  For example, if the PEB finds that there are three disabilities that render the Service member unfit for continued service and assigns a 10% disability rating to each of the three disabilities, then, pursuant to 38 C.F.R. § 4.25, the combined disability rating of 30% would be required.

8

27.     A PEB's disability rating determines the type and amount of military benefits and services to which the Service member is entitled upon discharge.

28.     A Service member whose unfitting conditions are rated at a combined level of 30% or higher is deemed "medically retired" and is entitled to receive monthly disability payments in perpetuity, as well as rights to medical care from the military department and commissary privileges for the Service member and his or her family.  *See* 10 U.S.C. § 1203.  In contrast, a Service member who is assigned a rating between 0-20% is deemed "medically separated" and receives a one-time lump sum disability severance payment.  10 U.S.C. § 1212.  A Service member who is "medically separated" is not entitled to the monthly disability payments or the medical care or commissary privileges for the Service member and his or her family, to which a "medically retired" Service member is entitled.

B.      **The Statute and Regulations Mandating All Medical Conditions Be Considered in Determining Fitness of a Service Member.**

29.     Chapter 61 of Title 10 of the U.S. Code requires the PEB to consider all medical conditions when determining whether a Service member is unfit to perform duties.  The statute provides:

> In making a determination of the rating of disability of a member of the armed forces for purposes of this chapter [10 USCA § 1201 *et seq*.], the Secretary concerned shall take into account all medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank or rating.

> 10 U.S.C. § 1216a(b).

30.     Chapter 61 of Title 10 of the U.S. Code requires that the PEB decision in every case "convey the findings and conclusions of the board in an orderly and itemized fashion with specific

attention to each issue presented by the member in regard to that member's case." *See* 10 U.S.C. § 1222. The statute does not further qualify or limit issues which may be presented by the member.

31.    At the time of Plaintiff's separations, the version of DoDI 1332.18 dated August 5, 2014, governed the operation of the DES. *See* DoDI 1332.18, "Disability Evaluation System," August 5, 2014 ("DoDI 1332.18").

32.    DoDI 1332.18 requires that the Secretaries of the Military Departments "[c]omply with chapter 61 of Reference (c) [10 U.S.C. § 1201 *et seq*.]. Under DoDI 1332.18, "[a] Service member may be determined unfit as a result of the combined effect of two or more impairments even though each of them, standing alone, would not cause the Service member to be referred into the DES or be found unfit because of disability." *Id.*

33.    DoDI 1332.18 states that the "MEB documents whether the Service member has a medical condition that will prevent them from reasonably performing the duties of their office, grade, rank, or rating. If the Service member cannot perform the duties of his office, grade, rank, or rating the MEB refers the case to the PEB." *Id.*, Enclosure 3, ¶ 2(d).

34.    DoDI 1332.18 states that the purpose of the MEB is to document "the medical status and duty limitations of Service members who meet referral eligibility criteria in Appendix 1 to this enclosure." *Id.*, Enclosure 3, ¶ 2(a).

35.    DoDI 1332.18 states that the purpose of the PEB is to "determine the fitness of Service members with medical conditions to perform their military duties …" *Id.*, Enclosure 3, ¶ 3(a).

36.    DoDI 1332.18 requires that a Service member be entitled at the FPEB to "address issues pertaining to his or her fitness …"  *Id.*, ¶ 3(g).

37.    Appendix 10 to Enclosure 4 of the Department of Defense Manual ("DoDM") 1 1332.18 requires that FPEB members consider a Service member's "rebuttals of issues pertaining to the fitness of conditions for service and the ratings assigned to unfitting conditions."  *See* DoDM 1 1332.18, Appendix 10 of Enclosure 4, ¶ 3(a).

38.    Appendix 2 to Enclosure 3 of DoDI 1332.18 states that "[t]he Secretaries of Military Departments will consider all relevant evidence in assessing Service member fitness …" *Id.*, Appendix 2 to Enclosure 3, ¶ 3.

39.    On August 16, 2016, the Assistant Secretary of Defense for Health Affairs issued a memorandum clarifying the combined effect rule contained in DoDI 1332.18.   In the memorandum, the Assistant Secretary of Defense for Health Affairs stated that 10 U.S.C. § 1216a requires the PEB to "take into account all medical conditions, whether individually or collectively, that render a member unfit."  The Assistant Secretary of Defense for Health Affairs further stated the PEB must "state, in its official findings, that combined effect was considered in the fitness determination (and whether it was applied in the final adjudication) of cases where two or more medical conditions are present in the service treatment record."  *See* Karen S. Guice, Assistant Secretary of Defense, *Combined Effect Clarification Memorandum* (Aug. 16, 2016).

40.    Part 3 of SECNAVINST 1850.4E is titled "Policies Concerning Fitness Versus Unfitness."   Section 3304 of Enclosure 3 of SECNAVINST 1850.4E is titled "Reasonable Performance of Duties."   Subsection (d) of Section 3304, titled "Overall Effect," states that "[a] member may be determined Unfit as a result of the overall effect of two or more impairments even

though each of them, standing alone, would not cause the member to be referred into the DES or be found Unfit because of the physical disability." *See* SECNAVINST 1850.4E, (Apr. 30, 2002), § 3304(d).

**C.**     **The Navy's "Properly Referred Policy" Challenged in This Action.**

41.   The Director of the Secretary of the Navy Council of Review Boards ("SECNAVCORB"), formerly known as the Naval Council of Personnel Boards, is the Secretary of the Navy's principal agent overseeing the PEB, and is responsible for the management, integrity and efficiency of the PEB. *See* SECNAVINST 1850.4E, *Department of the Navy Disability Evaluation Manual* at 3.

42.   On September 12, 2016, the SECNAVCORB issued a Policy Memorandum, SECNAVCORB Policy Letter 2016-1, restricting the PEB's consideration of medical conditions to *only* those conditions that are "properly referred by a Medical Evaluation Board (MEB)." *See* SECNAVCORB Policy Letter 2016-1.

43.   For DES cases, SECNAVCORB Policy Letter 2016-1 defined the term "properly referred by a MEB" as "those conditions [that are] addressed in the NARSUM [Narrative Summary] and also listed on the VA Form 21-0819." *See id.* Section I of VA Form 21-0819 is filled out by the military referring the Service member into DES, while Section II of VA Form 21-0819 is filled out by the Service member, who is provided with the opportunity to list conditions not referred by the military.[5]

44.   SECNAVCORB Policy Letter 2016-1 stated that "[c]onditions presented to the PEB via any other means are not considered to be properly referred *and will not be considered.*  If

---

[5] VA Form 21-0819 was revised in July 2018, after the Properly Referred Policy was rescinded.

Service members wish to have additional conditions referred by the MEB, they must work with their commands, treating providers, PEB Liaison Officers, and counsel to seek NARSUM addendums in a timely manner." *Id.* (emphasis added).

45.   On November 7, 2017, the SECNAVCORB issued a Policy Memorandum, SECNAVCORB Policy Letter 2017-4, which canceled and replaced SECNAVCORB Policy Letter 2016-3, and stated that: "each referred condition must be specifically addressed in a Medical Evaluation Report, Narrative Summary, or an appropriate Medical Addendum"; "each referred condition must be supported by a VA disability examination that has been completed by a qualified examiner;" and "all referred conditions must appear on a single NAVMED Form 6100/1, which must be digitally signed and dated by the convening authority." *See* SECNAVCORB Policy Letter 2017-4.

46.   Under SECNAVCORB Policy Letter 2017-4, conditions presented to the PEB via any means other than those set forth in Policy Letter 2017-4 were not considered to be properly referred and therefore would not be considered by the PEB. *Id.*

47.   Similar to SECNAVCORB Policy Letter 2016-1, SECNAVCORB Policy Letter 2017-4 required that Service member, not the MEB or the PEB, take action to obtain updated NARSUM addenda and NAVMED forms in a timely manner.

48.   On January 11, 2018, the SECNAVCORB issued a Policy Memorandum, SECNAVCORB Policy Letter 2018-1, which canceled and replaced SECNAVCORB Policy Letter 2016-1 and Policy Letter 2017-4, and stated that: "[e]ach referred condition must be specifically addressed in a Medical Evaluation Board Report, Narrative Summary ("NARSUM"), or an appropriate Medical Addendum"; "[e]ach referred condition must be supported by a VA

disability examination that has been completed by a qualified examiner"; and "[a]ll referred conditions must appear on a single NAVMED Form 6100/1, which must be digitally signed and dated by the Convening Authority after the MEB has concluded."  *See* SECNAVCORB Policy Letter 2018-1.

49.    Under SECNAVCORB Policy Letter 2018-1, conditions presented to the PEB via any means other than those set forth in Policy Letter 2018-1 would not be considered to be properly referred and would not be considered by the PEB.  *See id.*

50.    The Navy's policy as set forth in SECNAVCORB Policy Letters 2016-1, 2017-4, and 2018-1 (hereinafter the "Properly Referred Policy") was enforced by the SECNAVCORB from September 12, 2016, until June 11, 2018.

51.    While the Properly Referred Policy was in place and enforced, the Program Manager for the Navy Disability Evaluation System Counsel Program, which provides legal assistance to Sailors and Marines processing through the Integrated Disability Evaluation System ("IDES"), submitted several legal objections to the Properly Referred Policy on the basis that it was contrary to controlling statute and regulation and was resulting in injustices to large numbers of Service members and requested that Properly Referred Policy be cancelled or suspended.  *See* 2017 Legal Objection; 2018 Legal Objection.

52.    In the January 2018 memorandum, the DES Counsel Program Manager stated that the Properly Referred Policy "impermissibly narrow[ed] the scope of information that the PEB is required to consider" in making a fitness determination.  *See* 2018 Legal Objection, ¶ 6.

53.    The Program Manager contended *inter alia* that the Properly Referred Policy "ignore[d] the legal requirement" in 10 U.S.C. § 1216a that the Secretary of the Navy, in rating a

Service Member for medical retirement purposes, "take into account all medical conditions, whether individually or collectively, that render a member unfit to perform the duties of the member's office, grade, rank, or rating." *Id.* ¶ 5; 10 U.S.C. § 1216a(b).

54.     The Program Manager further stated that "[c]onsistent with [this statutory requirement]," a clarification memorandum issued by the Assistant Secretary of Defense (Health Affairs) requires the PEB to consider the "combined effect" of "two or more medical conditions . . . present in the service treatment record." 2018 Legal Objection ¶ 5; *see* Guice, *Combined Effect Clarification Memorandum*. According to the Program Manager, these provisions, taken together, indicate that Congress and the Department of Defense included language that was "purposefully broad" and did not restrict the PEB's review to "properly referred" conditions from the MEB. 2018 Legal Objection ¶ 5.

55.     SECNAVCORB responded to the objections submitted by the Program Manager for the Navy Disability Evaluation System Counsel Program by denying that the Properly Referred Policy was unlawful or contrary to regulation and by refusing to cancel or suspend the policy. *See* Memorandum dated December 18, 2017, from SECNAVCORB to the Program Manager for the Navy Disability Evaluation System Counsel Program regarding Legal Objection to SECNAVCORB Policy Letter 2017-4.

56.     The following year, the SECNAVCORB reversed its position and cancelled its Properly Referred Policy effective June 12, 2018. *See* SECNAVCORB Policy Letter 2018-3.

57.     Notwithstanding the June 12, 2018, cancellation of the Properly Referred Policy, no relief or remedy was provided for Service members who had already been wrongfully denied

medical retirement as a result of the unlawful Properly Referred Policy while it was in effect. *See id*.

**D.      The Unlawfulness of the Properly Referred Policy.**

58.    On information and belief, between September 12, 2016, and June 11, 2018, the period during which the Properly Referred Policy was implemented and enforced by the SECNAVCORB, up to ten thousand Sailors or Marines, including Plaintiff, were negatively impacted by the Properly Referred Policy.  The Program Manager for the Navy Disability Evaluation System Counsel Program estimated that as of November 2017, eight months before it was cancelled, the "legally objectionable" Properly Referred Policy had already negatively impacted "upward of five thousand wounded warriors."  2017 Legal Objection ¶ 7.

59.    The Properly Referred Policy unlawfully directed the PEB to consider only those conditions referred by a MEB in accordance with the policy; conditions presented to the PEB via any other means were not to be considered.  As a direct result of the Properly Referred Policy, the PEB did not consider all medical conditions of Plaintiff and similarly situated service members that were documented in service treatment records, Medical Evaluation Report, Narrative Summary, VA Form 21-0819, or an appropriate Medical Addendum, but not referred to the PEB in strict compliance with what the unlawful policy deemed to be "properly referred," and those service members were improperly denied medical retirement.

60.    The Navy's Properly Referred Policy was an outlier among the military branches. The Army, Air Force, and Coast Guard have never had a policy restricting the conditions that can be considered when making a fitness for duty determination such as that contained in SECNAVCORB Properly Referred Policy.

61.    Under the Properly Referred Policy, the PEB could only consider the fitness of medical conditions: (i) specifically addressed in a MEB, NARSUM, or Medical Addendum; (ii) supported by a VA disability examination; and (iii) that appear on a single NAVMED Form 6100/1, dated and signed by the Convening Authority.

62.    Under the Properly Referred Policy, where a Service member "despite due diligence" was unable to obtain prior to a formal PEB hearing a NARSUM for a condition newly diagnosed after submission of the Medical Evaluation Board Report ("MEBR"), the PEB could terminate the case even if the evidence indicated the newly diagnosed condition may be unfitting. *See* SECNAVCORB Policy Letter 2018-1 (emphasis added).  Case termination prevents a Service member's case from being evaluated by the PEB.  Upon termination, a Service member's case is returned to the originating Military Treatment Facility so that the Service member's DES process can be started anew with all his or her potentially unfitting conditions "properly" referred.

63.    In following the Properly Referred Policy, the PEB frequently refused to terminate, suspend, or reschedule cases where Sailors or Marines were diagnosed with a condition but did not meet the Properly Referred Policy requirements, thereby preventing Service members from getting the potentially unfitting condition "properly referred" to the PEB.

64.    The Properly Referred Policy was contrary to controlling statute and Department of Defense regulation.  Navy personnel recognized this, objecting to the Navy's emphasis on administrative speed over evaluating the health of its Service Members.  *See* 2017 Legal Objection ¶ 12.  Navy disability counsel contended:

> SECNAVCORB Policy Letter 2017-4 is contrary to both law and regulation.  The Department of Navy stands alone in denying wounded warriors the protections afforded to them… Congress and the Department of Defense have made it clear that expediency is no substitute for ensuring our nation's wounded warriors receive the benefits they are entitled to. SECNAVCORB Policy Letter 2017-4 is an ultra

17

vires attempt to restrict rights of wounded, ill, or injured wounded warriors. *Id*.

65.   More specifically, the Properly Referred Policy directed the PEB to act contrary to 10 U.S.C. § 1216a, 10 U.S.C. § 1222, DoDI 1332.18, Assistant Secretary of Defense (Health Affairs) Combined Effect Clarification Memorandum of 16 Aug 2016, DoDI 1332.18, and SECNAVINST 1850.4E because it restricted the PEB from considering the combined effect of all medical conditions when making fitness determinations.

66.   The Properly Referred Policy violated the clear mandate set forth in 10 U.S.C. § 1216a that the Secretary of the Navy, in making a determination of the rating of disability of a Service member, "shall take into account **all medical conditions**, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating." *See* 10 U.S.C. § 1216a(b) (emphasis added).

67.   The Properly Referred Policy violated the requirement set forth in 10 U.S.C. § 1222 that the PEB in every case "convey its findings and conclusions in an orderly and itemized fashion **with specific attention to each issue presented by the member in regard to that member's case**." *See* 10 U.S.C. § 1222 (emphasis added).

68.   The Properly Referred Policy was contrary to and violated the legal requirements contained in both the DoDI and DoDM 1332.18 commanding the PEB to "state, in its official findings, that combined effect was considered in the fitness determination (whether conditions collectively render a Service member unfit) of cases **where two or more medical conditions are present in the service treatment record**." *See* Assistant Secretary of Defense (Health Affairs) Combined Effect Clarification Memorandum of 16 Aug 2016 (emphasis added).

18

69.     Additionally, the Properly Referred Policy was contrary to and violated the legal requirements contained in the DoDI 1332.18, which provides "[a] Service member may be determined unfit **as a result of the combined effect of two or more impairments** even though each of them, standing alone, would not cause the Service member to be referred into the DES or be found unfit because of disability" and that "[t]he Secretaries of Military Departments **will consider all relevant evidence in assessing Service member fitness** …" *See* DoDI 1332.18; *see id.*, Appendix 2 to Enclosure 3, ¶ 3 (emphasis added).

70.     As counsel for the Navy DES recognized, the Properly Referred Policy "forces the PEB to cover their eyes and ears even when unambiguous evidence of a significant medical condition is presented to it."   2018 Legal Objection ¶ 9.   Navy counsel assessed that the Congressional and DoDI language was "purposefully broad" and neither this language, nor the statute it was predicated on, "limit the PEB's review to 'properly referred' conditions as determined by the SECNAVCORB.   This narrowing of the scope of information the PEB may consider is contrary to the congressional mandate in 10 U.S.C. § 1216a and is contrary to the Department of Defense regulation contained in [the Assistant Secretary of Defense (Health Affairs) Combined Effect Clarification Memorandum of 16 Aug 16]." *Id.* ¶ 5.   The Navy counsel noted: "There is no doubt that Congress would not approve of SECNAVCORB's decision to unlawfully narrow the scope of the information required to be considered by the PEB when adjudicating our wounded warrior's cases." *Id.*

71.     Navy personnel were on notice that the PEB was "knowingly disregarding numerous diagnosed conditions of our Nation's wounded, ill, or injured Service members."  2018 Legal Objections ¶ 11.  According to Navy DES counsel, "the reality is that the [Properly Referred Policy] has resulted in the re-victimization of a military sexual assault victim and has resulted in a

denial of military healthcare benefits to Service members with mental illness and numerous other

… conditions." *Id.* ¶ 8.  Navy DES counsel detailed numerous Service Members who were directly

and adversely affected by the Properly Referred Policy:

> a)   Marine's military sexual trauma, post-traumatic stress disorder ("PTSD"), and depression not considered because they were not "properly referred";
>
> b)   Marine with traumatic brain injury and PTSD had those conditions disregarded because they were not "properly referred";
>
> c)   Marine who could not void his bladder had that condition disregarded as well as the PTSD for events that occurred at the hospital because they were not "properly referred";
>
> d)   Marine with PTSD and suicidal ideation was only assigned a 10% disability rating for a "properly referred" lower back pain condition;
>
> e)   Sailor with Schizoaffective Disorder and plantar fasciitis (foot pain) only had foot pain considered since Schizoaffective Disorder not "properly referred";
>
> f)   Marine with traumatic brain injury after injury to the head was only considered for eye condition because only that was "properly referred";
>
> g)   Sailor with abnormal MRI indicative of brain tumor was not referred for further factual development because abnormal MRI was not "properly referred."
>
> *Id.*, Enclosure 1.

## E.   Mr. Torres's Military History.

72.   Mr. Torres enlisted in the Marine Corps on August 29, 2007.  His first period of

active duty service was from August 29, 2007, through August 28, 2011.

73.   Following his first period of active duty service, Mr. Torres served in the United

States Marine Corps Reserve.

74.    Mr. Torres then served on active duty again from February 10, 2013, until January 27, 2018, when he was honorably discharged due to disability.  During this period of service, Mr. Torres worked in the field of Aircraft Maintenance.

75.    Upon his discharge from the Marine Corps, Mr. Torres had achieved the rank/rate of Sergeant (E-5).  As a result of his service in the Marine Corps, Mr. Torres received awards and citations including the Marine Corps Good Conduct Medal, Selected Marine Corps Reserve Medal, National Defense Service Medal, Global War on Terrorism Expeditionary Medal, Global War on Terrorism Service Medal, Sea Services Deployment Ribbon, Armed Forces Reserve Medal (with M Device), Letter of Appreciation, Certificate of Appreciation, and Sharpshooter Rifle Qualification Badge.

**F.    Mr. Torres's IDES Proceedings.**

76.    As a result of the Properly Referred Policy, Mr. Torres was denied the opportunity to qualify for military medical retirement because the PEB wrongly refused to fully consider each of his medical conditions in determining whether he was unfit for continued military service. Specifically, Mr. Torres suffered procedural harm when a PEB failed to consider medical evidence beyond those medical conditions that were deemed by the PEB to have been "properly referred" — his back spondyloarthropathy and sleep apnea.  Specifically, the Navy's DES process in operation at the time failed to consider injuries to Mr. Torres' shoulders, wrists, fingers, knees, ankles, hips, and back in addition to those that were deemed "properly referred."  Indeed, Mr. Torres was placed on limited duty ("LIMDU") as a result of several medical conditions in October 2017, December 2018, and twice in January 2018 ,while his doctors recommended that his case be reviewed again in the DES process to consider the medical conditions that had been overlooked.

21

Attempts were made to have Mr. Torres extended on active duty so that these medical conditions could be evaluated by the PEB.

77.   Ultimately, Mr. Torres was denied an extension, and he was medically separated from the Marine Corps on January 27, 2018, while still on LIMDU for certain medical conditions.

78.   The PEB wrongly refused to fully consider several of Mr. Torres' medical conditions in determining whether he was unfit for continued military service, denying him the full and fair determination process guaranteed by law.

79.   As a result, Mr. Torres was deprived of his ability to qualify for a medical retirement including ongoing monthly disability retirement payments, health care coverage including spousal and eligible dependent coverage, and military commissary and exchange privileges.

## G.   **Mr. Torres's VA Ratings**.

80.   As part of the disability evaluation system process, the VA issued proposed disability ratings for all of Mr. Torres's service-connected disabilities, including a 10% rating for Mr. Torres's lumbosacral spondylosis, a 50% rating for Mr. Torres's sleep apnea, a 20% rating for each of Mr. Torres's shoulder seronegative spondyloarthropathy, a 10% rating for each of Mr. Torres's wrist seronegative spondyloarthropathy, and a 10% rating for each of Mr. Torres' knee seronegative spondyloarthropathy.  The combined disability rating was proposed to be 100%.

81.   Pursuant to 10 U.S.C. § 1216a, the PEB adopted only the VA's 10% rating for Mr. Torres's unfitting back condition, requiring his medical separation, rather than retirement, from service.  In reaching its determination on the so-called "properly referred" conditions, the Navy

found a rating of 10% for the back issue alone and declined to adopt the rating for sleep apnea. Because the Navy's Properly Referred Policy unlawfully limited the PEB's review of Mr. Torres' potentially unfitting conditions, Mr. Torres has been denied military medical retirement.

## V.     CLASS ACTION ALLEGATIONS

82.    Plaintiff Torres bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a class of similarly situated individuals.

83.    Plaintiff Torres seeks to represent a class of all veterans of the United States Navy and Marine Corps who claimed conditions in Section II of the joint DoD/VA claim form (VA Form 21-0819) that were not listed on the NAVMED Form 6100/1 dated and signed by the Convening Authority and who did not receive a medical retirement through the IDES.

84.    The Navy utilizes VA Form 21-0819 to refer Sailors and Marines into the IDES under DoD Manual 1332.18, Vol. 2.  The military lists referred conditions in Section I of VA Form 21-0819.  A Service member must use Section II of the form to claim disabling and service-connected conditions that were not referred by the Navy and Marine Corps.

85.    NAVMED Form 6100 is a series of documents that includes the Medical Board Report Cover Sheet (NAVMED 6100/1), the Medical Board Statement of Patient (NAVMED 6100/2), the Medical Board Statement of Compliance with Treatment (NAVMED 6100/4) and the Abbreviated Medical Board Report (NAVMED 6100/5) with the medical board report cover sheet.

86.    The NAVMED Form 6100, including the Medical Board Report Cover Sheet (NAVMED 6100/1), is filled out by the MEB and transmitted to the PEB to allow the PEB to make fitness determinations.

23

87.   This action has been brought and may properly be maintained as a class action under Federal law.   It satisfies the numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

88.   On information and belief, there are up to 10,000 people in the proposed Class, and the class members are identifiable using the records maintained in the ordinary course of business by Defendant.  Joinder is impracticable because the class is numerous.

89.   A common question of law and fact exists as to all members of the proposed Class:

> Whether the Navy's failure to consider all claimed conditions listed in Section II on the joint DoD/VA claim form (VA Form 21-0819) that were not listed on the NAVMED Form 6100/1 signed and dated by the Convening Authority in denying a medical retirement to Sailors and Marines between September 12, 2016, through June 11, 2018 is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and without observance of procedures required by law.

90.   Defendant is expected to raise common defenses to these claims, including denying that his actions were in violation of the law.

91.   Plaintiff's claims are typical of the members of the Class because Plaintiff and all class members are injured by the same wrongful acts, omissions, policies and practices of Defendant as described in this Complaint.  Plaintiff's claims arise from the same policies, practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

92.   Plaintiff has the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class.  Plaintiff has no interests adverse to the interests of the proposed class.  He retained *pro bono* counsel with experience and success in class

action and veterans' matters.  Counsel for Plaintiff knows of no conflicts among members of the Class or between counsel and members of the Class.

93.    Defendant has acted on grounds generally applicable to all members of the Class, and this action seeks declaratory and injunctive relief.  Plaintiff therefore seeks class certification under Rule 23(b)(2).

94.    In the alternative, the requirements of Rule 23(b)(1) are satisfied because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of contact for the party opposing the proposed Class.

**COUNT I**
**(Violation of the APA, 5 U.S.C. § 706(2)(A) –**
**Arbitrary and Capricious, Abuse of Discretion)**

95.    Plaintiff realleges and incorporates by reference each of the allegations in Paragraphs 1 through 94 above as if fully set forth herein.

96.    Defendant's conduct in developing and administering its Properly Referred Policy was arbitrary and capricious, constituted an abuse of discretion, and was otherwise not in accordance with law.

97.    Defendant's actions pursuant to the Properly Referred Policy in evaluating and determining the fitness for duty and disability ratings of each class member, and in denying them the full and fair determination guaranteed by law as to whether they are entitled to military medical retirement, as described above, were arbitrary and capricious, constituted an abuse of discretion, and were otherwise not in accordance with law.

98.    As a direct result of the Navy's unlawful disability evaluation, rating decision, and determination of eligibility for medical retirement, all based on the Navy's actions in accordance with its Properly Referred Policy, Plaintiff continues to be deprived of the disability retirement pay and benefits to which he is entitled under 10 U.S.C. § 1201.

99.    Under the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be… arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).  Plaintiff is therefore entitled to the relief requested below.

**COUNT II**
**(Violation of the APA, 5 U.S.C. § 706(2)(C) –**
**Agency Action Short of Statutory Right)**

100.  Plaintiff realleges and incorporates here Paragraphs 1-99.

101.  Title 10 U.S.C. § 1216a(b) provides that "[i]n making a determination of the rating of disability of a member of the armed forces for purposes of this chapter, the Secretary concerned shall take into account all medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating."

102.  The Navy failed to evaluate all medical conditions in considering whether Plaintiff should have been retired from the military due to the Properly Referred Policy.

103.  Under the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be … short of statutory right," 5 U.S.C. § 706(2)(C). Plaintiff is therefore entitled to the relief requested below.

## COUNT III
### (Violation of APA, 5 U.S.C. § 706(D) –
### Agency Action Without Observance of Procedure Required By Law)

104.  Plaintiff realleges and incorporates here paragraphs 1-103.

105.  DoDI 1332.18(3)(e) requires the military medical retirement system to "consider all medical conditions, whether individually or collectively, that render the Service member unfit to perform the duties of the member's office, grade, rank, or rating."

106.  DoDI 1332.18(5)(a) requires the military medical retirement system to compensate Service Members for disabilities that "cause or contribute to career termination."

107. The Navy's refusal to consider all medical conditions as reflected in DoDI 1332.18(3)(e) and DoDI 1332.18(5)(a) comprised agency action, which did not follow the procedures required by applicable law.

108.  Defendant's actions pursuant to the Properly Referred Policy in evaluating and determining the fitness for duty and disability ratings of each class member, and in denying them the full and fair determination guaranteed by law as to whether they are entitled to military medical retirement, as described above, resulted in agency action without the observance of procedure required by law.  *See* 5 U.S.C. § 706(D).

## VI.     PRAYER FOR RELIEF

109.  Plaintiff and the class he represents have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of Defendant, as alleged herein, unless Plaintiff and the class he represents are granted the relief they request.

WHEREFORE, Plaintiff Torres, on behalf of himself and on behalf of the Class Members defined herein, respectfully request that this Court certify the Class, appoint Mr. Torres as representative, and designate Plaintiff's Counsel of Record as Class Counsel, and that it enter judgment in their favor and against Defendant providing the following relief:

A.  Certify this Complaint as a Class Action;

B.  Designate Mr. Torres as Class Representative;

C.  Designate Plaintiff's Counsel of Record as Class Counsel;

D.  Declare that the Director of the Secretary of the Navy Council of Review Boards' "Properly Referred Policy," administered from September 12, 2016, until June 11, 2018, violated statutory law and DoD Instructions;

E.  Declare that the Director of the Secretary of the Navy Council of Review Boards' failure to follow the required procedures, resulting in the denial of unfitness findings being awarded to Plaintiff and Class Members for their non-referred conditions was arbitrary, capricious, an abuse of discretion, and not in accordance with law;

F.  Order that, unless explicitly declined by the Service Member, (i) the PEB's fit findings be reassessed through a replacement PEB proceeding and (ii) the final combined disability rating decisions for Plaintiff and Class Members be recalculated by combining each Plaintiff and Class member's original DoD disability rating with the disability rating(s) awarded by the replacement PEB

G.  Order that the Director of the Secretary of the Navy Council of Review Boards allow Plaintiff and Class Members to submit evidence on any non-referred condition;

28

H.   Order that the Director of the Secretary of the Navy Council of Review Boards require a new NARSUM addendum be submitted to the PEB for Plaintiff and each Class Member;

I.   Order that the Director of the Secretary of the Navy Council of Review Boards conduct an informal and, if requested, a formal PEB evaluation, with all the protections afforded under DoDI 1332.18 and SECNAVINST 1850.4E for Plaintiff and each Class Member to review *de novo* the fitness of all non-referred conditions;

J.   Order that the Director of the Navy Council of Review Boards assign the disability rating established by the VA at the time of discharge for all the unfitting conditions of Plaintiff and Class Members, recalculate the combined disability rating to include all unfitting conditions, and accord Plaintiff and Class Members the appropriate duty or retirement status;

K.   Retain jurisdiction of this case until Defendant has fully complied with the orders of this Court;

L.   Award Plaintiff attorneys' fees and costs incurred in bringing and maintaining this action pursuant to 28 U.S.C. § 2412, and other applicable authorities; and

M.   Grant Plaintiff and Class Members such other and further relief as the Court may deem necessary and appropriate.

****

Respectfully submitted,

DATED this 2nd day of February 2021.

_____s/ Barak Cohen_____
Barak Cohen (DC Bar No. 248945)
Donald J. Friedman (DC Bar No. 413701)
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C.  20005-3960
Phone:  202.654.6200
Fax:       202.654.6211
dfriedman@perkinscoie.com
bcohen@perkinscoie.com

David P. Chiappetta* (DC Bar No. 474748)
Maria A. Nugent*
Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105-3204
Phone:  415.344.7000
Fax:       415.344.7050
DChiappetta@perkinscoie.com
MNugent@perkinscoie.com

Geoffrey A. Vance*
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
Phone:  312.324.8400
Fax:       312.324.9400
GVance@perkinscoie.com

Thomas J. Tobin (DC Bar No. 1049101)
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:       206.359.9000
TTobin@perkinscoie.com

_____s/ Barton Stichman_____
Barton Stichman (DC Bar No. 218834)
David Sonenshine (DC Bar No. 496138
Rochelle Bobroff (DC Bar No. 420892)
Esther Leibfarth**
National Veterans Legal Services Program
1600 K Street, N.W. Suite 500
Washington, DC 20006-2833
Phone: 202.265.8305
Facsimile: 202.223.9199
Bart@nvlsp.org
David@nvlsp.org
Rochelle@nvlsp.org
Esther@nvlsp.org

*Application for Admission Pending*
**Application for Admission Forthcoming*

*Attorneys for Plaintiff Oscar Torres*

30