## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OSCAR D. TORRES**, on behalf of himself and others similarly situated, | |
| *Plaintiffs,* | |
| **v.** | Case No. 1:21-cv-306-RCL |
| **CARLOS DEL TORO[1]**, in his official capacity as Secretary of the Navy, | |
| *Defendant.* | |

## <u>MEMORANDUM OPINION</u>

This case is about the process by which the Navy can discharge disabled Service members. When a disabled Service member faces discharge, the Navy assigns a disability level to that member to determine whether they will be medically "separated" or "retired." The distinction matters—Service members who are "medically retired" receive monthly disability payments in perpetuity, rights to medical care from the military department at issue, and commissary privileges for the Service member and his or her family. Service members who are "medically separated" do not receive these same benefits.

Plaintiff, Sergeant Oscar D. Torres (Ret.), filed this putative class action against the Secretary of the Navy in his official capacity to challenge the Navy's former "Properly Referred" policy, which governed the Navy's review process for determining a Service member's disability level. Under the Navy's policy, the board evaluating a soldier's military retirement would consider only those medical conditions "properly referred" by an intermediate evaluation board

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary of the Navy Carlos Del Toro has been automatically substituted for Thomas W. Harker, the former Acting Secretary of the Navy.

and complying with the policy's referral requirements.  Plaintiff contends that the policy violated Congress's and the Department of Defense's instructions and wrongfully resulted in a "medically separated" designation when he was discharged from the Navy.  On behalf of himself and others, plaintiff seeks declaratory and injunctive relief to obtain a "do-over" of that disability determination, unencumbered by the Navy's allegedly unlawful policy.

Before the Court is plaintiff's motion for class certification and motion to appoint class counsel.  Pl.'s Mot., ECF No. 29.  With two reservations discussed below, defendant agrees that the Court can certify a class and appoint class counsel.  Upon consideration of the parties' filings, Pl.'s Mot.; Pl.'s Br., ECF No. 30-1; Def.'s Br., ECF No. 33; Pl.'s Reply, ECF No. 34, and the entire record herein, the Court will **GRANT** plaintiff's motion for class certification and to appoint class counsel by separate order.

## I.     BACKGROUND

### A.  Overview Of The Military Disability Evaluation System

Military Service members facing retirement or separation because of disabilities are entitled to "a full and fair hearing" upon request.  10 U.S.C. § 1214.  Accordingly, Congress has provided for a review process by which the branches of the U.S. Military—including the Navy— may discharge disabled Service members.  *See id.* § 1201.  The nuts and bolts of this review process originate from three primary sources.  First, Congress regulates the Services' responsibilities for disability determinations in Chapter 61 of Title 10 of the U.S. Code.  Next, pursuant to a statutory mandate, the Secretary of Defense "prescribe[s] regulations on standards and guidelines concerning the physical evaluation board [("PEB")] operated by each of the Secretaries of the military departments with regard to—(A) assignments and training of staff; (B) operating procedures; and (C) timeliness of board decisions."  *Id.* § 1222(c).  Each Service Secretary, in turn, has authority to "prescribe regulations" to carry out federal law's requirements.  *Id.* § 1216.

Three statutes are salient in this case.  First, in rendering a disability determination, "the Secretary concerned shall take into account *all* medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating." *Id.* § 1216a(b) (emphasis added).  Second, the applicable Service uses the Department of Veterans Affairs ("VA") schedule for rating disabilities.  *See id.* § 1216a(a).  And third, a PEB must "convey the findings and conclusions of the board in an orderly and itemized fashion with specific attention to *each issue presented by the member* in regard to that member's case." *Id.* § 1222 (emphasis added).

Acting pursuant to the congressional mandate, the U.S. Department of Defense issued Instruction 1332.18, which establishes the Department of Defense's Disability Evaluation System ("DES").  *See* Administrative Record ("AR") at 1942, ECF No. 35.  The DES is a multistep performance-based review process used to evaluate whether a Service member's medical conditions render him unfit to perform his duties.  *See* AR at 1942.

The DES process is initiated by referral from a Service member's commander, the commander of the medical facility treating the Service member, or the Service member's individual medical officer.  *See* AR at 2055–56; *see also* AR at 1967–70.  The referring entity completes VA Form 21-0819 and lists the conditions for which the Service member is being referred.  AR at 2335.  And while Service members cannot self-refer to the DES, VA Form 21-0819 contains a section for Service members to list all claimed conditions (including those not specifically referred by the referring entity).  *See, e.g.*, AR at 370–71.  Next, the Service member attends a Compensation and Pension Examination for both newly claimed conditions and referred conditions, the VA assigns each of those conditions a rating, and the member's command assesses the Service member's ability to perform their duties.  AR at 3.

Once the DES process has been initiated, a Medical Evaluation Board ("MEB"), comprised of a body of physicians, is convened to evaluate the Service member's disability.  *See, e.g.*, AR at 1957.  This process is "designed to determine whether a Service member's long-term medical condition enables him/her to continue to meet medical retention standards, in accordance with military service regulations."  Compl. ¶ 21; *see* AR at 1957–59.  When the MEB determines that a Service member "cannot perform the duties of his office, grade, rank or rating the MEB refers the case to the (Physical Evaluation Board) PEB."  AR at 1957.

The PEB then determines a Service member's fitness for continued service based on their physical and mental disabilities.  AR at 1959.  Two separate boards comprise the PEB—an informal Physical Evaluation Board ("IPEB") and a formal Physical Evaluation Board ("FPEB").  AR at 1959. After referral from the MEB, an IPEB makes an initial determination regarding the Service member's fitness using the VA schedule for rating disabilities.  AR at 1959.  If the Service member disagrees with the findings of the IPEB, they can demand a FPEB appearance.  AR at 1959.

If either PEB finds that a Service Member is unfit for continued military service, the PEB must assign a disability rating from 0% to 100%, in increments of 10%, for each physical or mental condition that renders the Service member unfit for continued military service.  ECF No. 1 ¶ 25. If the PEB finds that more than one medical condition renders the Service member unfit for continued service, then the PEB assigns a combined disability rating.  *See* 38 C.F.R. § 4.25.

A Service member whose unfitting conditions are rated at a combined level of 30% or higher receives a "medically retired" designation and is entitled to monthly disability payments in perpetuity, as well as rights to medical care from the military department and commissary privileges for the Service member and his or her family. *See* 10 U.S.C. § 1203. In contrast, a

Service member who is assigned a rating between 0 and 20% is deemed "medically separated" and receives a one-time lump sum disability severance payment. *Id.* § 1212. A Service member who is "medically separated" is *not* entitled to the same monthly disability payments, medical care, and family commissary privileges to which a "medically retired" Service member is entitled. *Id.*

**B. The "Properly Referred" Policy**

The Navy has its own regulations detailing the procedures used to evaluate and adjudicate disability cases. *See* AR at 2000–2300.

From September 2016 to June 2018, the Navy's DES process was governed by the "Properly Referred" policy. AR at 2. Under this policy, the MEB considers all conditions referred by the Service member's commander or applicable medical officer as well as those listed on the VA Form 21-0819 by the Service member. *See, e.g.*, AR at 20–24. But the PEB's consideration of medical conditions was restricted to only those conditions that were "properly referred by a Medical Evaluation Board (MEB)." *See* AR at 20. A condition was "properly referred" for purposes of the policy if the medical condition was:

> (i) specifically addressed in a MEB report, narrative summary, or Medical Addendum;
>
> (ii) supported by a VA disability examination; and
>
> (iii) appearing on a single Navy Medical Department ("NAVMED") form (Form 6100) used by the MEB, dated and signed by the authority convening the disability review.

*See* AR at 21–22. According to the Navy's guidance, "[c]onditions presented to the PEB via any other means are not considered to be properly referred and will not be considered. If Service members wish to have additional conditions referred by the MEB, they must work with their commands  treating providers, PEB Liaison Officers, and counsel to seek . . . addendums in a timely manner." AR at 22.

In June 2018, the Navy rescinded the Properly Referred Policy.  AR at 2.  But the Navy declined to provide any relief to Service members who claimed that the policy resulted in the wrongful denial of medical retirement.  AR at 5–6.

## C.  Plaintiff's DES Evaluation

Plaintiff served as an active-duty Service member in the United States Marine Corps from February 10, 2013 until January 27, 2018, when he was honorably discharged from the military due to disability.  Compl. ¶ 14.  Plaintiff's medical provider referred him to the DES for chronic low back pain, sacroiliitis (inflammation of the sacroiliac joint), and spondyloarthropathy (inflammatory rheumatic disease).  AR at 380.  He claimed an additional twenty-five conditions on his VA Form 21-0819.  AR at 372.  The VA issued proposed disability ratings for all of Mr. Torres service-connected disabilities, rating seventeen or more at 10% or more service connection. AR at 317–19.   For example, the VA issued a 10% rating for Mr. Torres's lumbosacral spondylosis, a 50% rating for Mr. Torres's sleep apnea, a 20% rating for each of Mr. Torres's shoulder seronegative spondyloarthropathy, a 10% rating for each of Mr. Torres's wrist seronegative spondyloarthropathy, and a 10% rating for each of Mr. Torres' knee seronegative spondyloarthropathy.  AR at 81–83, 317–19.

After review, the MEB referred just two conditions to the PEB—Mr. Torres's sleep apnea and spondyloarthropathy—and concluded that the remainder of plaintiff's conditions were not duty limiting.  AR at 374–78.

Upon review of the MEB-referred conditions, the PEB found plaintiff unfit for spondyloarthropathy at just 10% and fit for sleep apnea.  AR at 310, 384–88.  By statute, plaintiff was eligible for separation and severance pay, but was not eligible for medical retirement.  AR at 2096; 10 U.S.C. §1203(b); AR at 2096.  Plaintiff requested an FPEB and argued that the Navy

6

should assign a combined disability rating of at least 30% for his spondyloarthropathy and three claimed, VA-rated conditions: bilateral plantar fasciitis, and left and right ankle conditions. AR at 72, 74, 175. The FPEB instead affirmed Plaintiff's single unfitting condition because the additional claimed conditions were not "properly referred."  AR at 0171; Compl. ¶ 76.

### D.  The Present Lawsuit

On February 2, 2021, plaintiff filed this putative class action against the Secretary of the Navy, contending that disability determinations affected by the Properly Referred policy violated the Administrative Procedures Act ("APA").  *See* Compl. ¶ 95–108.  He argues that he "continues to be deprived of the disability retirement and pay and benefits to which he is entitled" as a "direct result" of the Properly Referred policy's effect on his evaluation.  *Id.* ¶ 98; *see id.* ¶¶ 102, 107–08. On behalf of himself and putative class members, plaintiff requested, among other things, a declaration that the Properly Referred policy was unlawful, an order requiring that the PEB's fitness findings be reassessed through a replacement PEB proceeding, that the PEB recalculate combined disability ratings, and that the Navy accord plaintiff and class members the "appropriate duty or retirement status."  *Id.* ¶¶ 28–29.

On July 2, 2021, plaintiff moved to certify a class and appoint class counsel.  Plaintiff and defendant agree that this Court can certify the following class:

> All veterans of the United States Navy and Marine Corps whose final Physical Evaluation Board occurred between September 12, 2016 and June 11, 2018 who claimed additional conditions in the applicable section of the joint DOD/VA claim form (VA Form 21-0819)* that were not listed on the last-dated NAVMED Form 6100/1 signed by the Convening Authority and who did not receive a medical retirement through the IDES.
>
> *For example, Section III, Item 11 on VA Form 21-0819 (Oct 2009); and Section III, Item 8 on VA Form 21-0819 (June 2009).

Pl.'s Mot. 2.  While the parties agree that this Court can certify a class and appoint class counsel, they dispute the class's common question of law and the number of members in the class.  Plaintiffs argue that the class's common question of law is  "whether the Navy's failure to consider all claimed conditions—limiting its review to those conditions that were 'properly referred'—between September 2016 and June 2018 is and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and without observance of procedures required by law."  Pl.'s Br. 2.  In response, defendant argues that the proper question is "whether the Navy could review some claimed conditions through the Medical Evaluation Board ("MEB") only, or if the MEB was required to forward every condition to the Physical Evaluation Board ("PEB") for a separate evaluation."  Def. Br. 1.  And while plaintiff proposes that there are 10,000 similarly situated Service members, Pl.'s Mot. 2, defendant estimates, based on a review of Navy records, that the size of the putative class is 3,776 individuals, Def. Br. 12.

Plaintiff's motion for class certification and appointment of class counsel is ripe for review.

## II.   LEGAL STANDARDS

Class litigation is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979).  Lest the exception swallow the rule, Federal Rule of Civil Procedure 23 imposes prerequisites to class certification that "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).  Under Rule 23(a), the party seeking certification must demonstrate that

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 350 (2011). ("A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]"). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *See Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 50 (D.D.C. 2010). In addition to meeting each of these prerequisites, the class must fit at least one of the three "types" described in Rule 23(b).

Here, plaintiff seeks certification under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.23(b)(2). The Supreme Court has explained that

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal-Mart*, 564 U.S. at 360 (internal citation and quotation marks omitted). Thus, Rule 23(b)(2) sets forth two basic requirements. First, the party opposing the class must have acted, refused to act, or failed to perform a legal duty on grounds generally applicable to all class members. 2 William B. Rubenstein, Newberg on Class Actions § 4:26 (5th ed.). Second, "final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, [must be] appropriate." *Id.* (alteration in original) (quoting Fed. R. Civ. P. 23(b) advisory committee's note to 1966 amendment).

### III.   ANALYSIS

While the parties in this case agree that the Court may certify the class, certification is proper only if this Court "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *D.L. v. District of Columbia*, 302 F.R.D. 1, 10–11 (D.D.C. 2013) (quoting *Wal-Mart*, 564 U.S. at 350–51), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017). The Court finds that Rule 23(a)'s requirements—numerosity, commonality, typicality, and adequacy of representation—are satisfied here. And plaintiff has demonstrated that the Court can certify this class under Rule 23(b)(2). Accordingly, the Court will certify the requested class and appoint plaintiff's attorneys as class counsel.

### A. Numerosity

Rule 23(a)(1) requires plaintiff to show that "joinder of all members is impracticable." That does not mean that joinder would be impossible—instead, plaintiff must show "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *D.L.*, 302 F.R.D. at 11. Although there is no specific minimum number of class members required to establish numerosity, courts in this district presume that a class is numerous enough to satisfy the requirement if it includes forty or more members. *See N.S. v. Hughes*, 335 F.R.D. 337, 352 (D.D.C. 2020); *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 206 (D.D.C. 2018). And a plaintiff need not provide the exact number of potential class members—a "reasonable . . . estimate" will suffice. *Lightfoot v. District of Columbia*, 246 F.R.D. 326, 335 (D.D.C. 2007).

While the parties dispute whether the number of class members is approximately 10,000, Pl.'s Br. 10; or 3,776, Def. Br. 12; either number is more than enough to satisfy the numerosity requirement. Joining this number of plaintiffs would be "impracticable." Fed. R. Civ. P. 23(a)(1). And despite the parties' dispute about the correct number of plaintiffs, the parties agree that

members of the class can be readily ascertained based on the Navy's own records.  *See* Pl.'s Br. 10; Def. Br. 12.

Rule 23(a)(1)'s numerosity requirement is satisfied here.

## B. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." However, "[a]t a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality."  *Love v. Johanns*, 439 F.3d 723, 729–30 (D.C. Cir. 2006) (citation omitted).  For that reason, a "common question" must be one that is "of such a nature that . . . determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350; *see Abraha v. Colonial Parking, Inc.*, No. CV 16-680 (CKK), 2020 WL 4432250, at *4 (D.D.C. July 31, 2020).  In other words, "class members must have suffered the same injury for the same reason, such as a uniform policy or practice that is illegal."  *D.L.*, 302 F.R.D. at 12 (citing *Wal-Mart*, 564 U.S. at 349–50); *see Abraha*, 2020 WL 4432250, at *4.  As the Supreme Court has explained, "it is not common questions that matter so much as the 'capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'"  *D.L.*, 302 F.R.D. at 12. (quoting *Wal-Mart*, 564 U.S. at 350).

A class wide proceeding would generate common answers here because the proposed class members have suffered "the same injury for the same reason."  *D.L.*, 302 F.R.D. at 12 (citation omitted).  The class members allege that they were denied military disability retirement status while the Properly Referred Policy was in effect and that the Policy unlawfully narrowed the scope of the PEB's review of members' disabling conditions.  Thus, the class members' allegations implicate the same injury and the same legal theory.  Crucially, plaintiffs are not seeking a court

determination regarding their particular fitness or discharge type—indeed, such a determination would depend on the facts and circumstances of each individual's case and could involve diverging legal and factual theories.  The core issue in this case is the legality of "a uniform policy or practice that affects all class members"—the Navy's Properly Referred policy.  *D.L.*, 302 F.R.D. at 12 (quoting *D.L. v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)).

The Court acknowledges the dispute between the parties about the proper common question at issue (to which they devote significant attention in their briefing).  *See* Def.'s Br. 9–11, Pl.'s Reply 4–5.  Plaintiff argues that the common question is "whether the Navy's failure to consider all claimed conditions—limiting its review to those conditions that were 'properly referred'—between September 2016 and June 2018 is and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and without observance of procedures required by law."  Pl.'s Br. 2.  Defendant responds that the proper question is "whether the Navy could review some claimed conditions through the MEB only, or if the MEB was required to forward every condition to the PEB for a separate evaluation."  Def.'s Br. 9.  But as explained above, the core issue in this case is whether the Properly Referred policy is lawful.  The parties' framings of that issue—which incorporate their respective theories about the policy's lawfulness—are simply beside the point.

Rule 23(a)(2)'s commonality requirement is satisfied here.

## C. Typicality

Next, Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Generally speaking, a named plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same

legal theory." *D.L.*, 302 F.R.D. at 14 (quoting *Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996)). "The facts and claims of each class member do not have to be identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Radosti*, 717 F. Supp. 2d at 52 (quoting *Abraha*, 2020 WL 4432250, at *5). This requirement "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart*, 564 U.S. at 349.

Here, plaintiff alleges an identical procedural injury to that of other proposed class members. The Navy's PEB, acting pursuant to the "Properly Referred" policy, limited its review of plaintiff and class members' purported disabling conditions to only those that were "properly referred" by the MEB. Plaintiff's claims are thus typical of the proposed class.

Rule 23(a)(3)'s typicality requirement is satisfied here.

### D.  Adequacy and Appointment of Class Counsel

The final prerequisite to class certification, adequacy, requires a finding that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria for adequacy: "(1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *D.L.*, 302 F.R.D. at 14 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

Upon consideration of the record currently before the Court, both criteria appear to be satisfied. The Court sees no evidence in the record of any antagonistic or conflicting interests between plaintiff and the class. Plaintiff's interest is not only identical to the interests of class

13

members, but he appears able to vigorously prosecute the interests of the class through the qualified

pro bono counsel that he has retained.

Indeed, the record reflects that class counsel are qualified and will "fairly and adequately

represent the interests of the class." Fed. R. Civ. P. 23(g). Plaintiff's attorneys have experience

in both veterans' matters and class-action litigation. *See* Declaration of Barton F. Stichman

("Stichman Decl.") 1–2, ECF No. 29-3; Pl.'s Br. 14. For example, several of plaintiffs' attorneys

are from the National Veterans Legal Services Program and have significant experience in class-

action litigation as part of an organization focused on representing the interests of veterans.

Stichman Decl. 1–2. And plaintiff's counsel from Perkins Coie LLP have represented that they

have successfully litigated complex class action matters. *See* Pl.'s Br. 14. Counsel's actions in

this case thus far demonstrate their professional ability and that the requirements of Rule 23(g) are

met.

Rule 23(a)(4)'s adequacy requirement is satisfied here.

## E.  Rule 23(b)(2) Requirements[2]

FRCP 23(b)(2) permits class actions for declaratory or injunctive relief where "the party

opposing the class has acted or refused to act on grounds generally applicable to the class."

According to this rule, "two elements must exist: (1) the defendant's action or refusal to act must

be 'generally applicable to the class,' and (2) plaintiff must seek final injunctive relief or

corresponding declaratory relief on behalf of the class." *Disability Rights Council of Greater*

*Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 28 (D.D.C. 2006) (citing 7AA Charles

---

[2] In his complaint and motion for class certification, plaintiff argues that certification of the proposed class
is also permissible under Rule 23(b)(1). *See* Compl. ¶ 94; Pl. Mot. 3. He does not mention this provision
in his supporting memorandum. In any event, the Court need not consider whether certification under Rule
23(b)(1) is warranted here because the Court will certify the class under Rule 23(b)(2).

Allen Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1775 (3d ed. 2006)); *see Steele v. United States*, 159 F. Supp. 3d 73, 81 (D.D.C. 2016).

The Supreme Court has explained that the "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted." *Wal-Mart*, 564 U.S. at 360.  When "a single injunction or declaratory judgment would provide relief to each member of the class," the class is properly certified under (b)(2).  *Id.*; *N.S.*, 335 F.R.D. at 355.

Here, class members in the present lawsuit seek declaratory and injunctive relief that will apply equally to all class members.   That relief would compel the Navy to conduct new DES proceedings to reassess and recalculate procedurally unlawful PEB findings.  An injunction would rectify this procedural harm equally for all class members.  *See, e.g.*, *Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."); Fed. R. Civ. P. 23(b)(2), advisory committee note to 1966 amendment (stating that Rule 23(b)(2) was "intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate").

Additionally, certification under Rule 23(b)(2) is appropriate because the proposed class seeks no monetary relief.  *See, e.g.*, *Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."). Declaratory and injunctive relief that, among other things, compels the Navy to reassess and recalculate PEB findings with new proceedings would remedy the harm that each class member experienced.  *See* Compl. ¶ 6.

*       *       *

For the aforementioned reasons, the Court will certify the following class pursuant to Rule 23(b)(2):

> All veterans of the United States Navy and Marine Corps whose final Physical Evaluation Board occurred between September 12, 2016 and June 11, 2018 who claimed additional conditions in the applicable section of the joint DOD/VA claim form (VA Form 21-0819)* that were not listed on the last-dated NAVMED Form 6100/1 signed by the Convening Authority and who did not receive a medical retirement through the IDES.
>
> *For example, Section III, Item 11 on VA Form 21-0819 (Oct 2009); and Section III, Item 8 on VA Form 21-0819 (June 2009).

The Class meets the numerosity, commonality, typicality, and adequacy criteria set forth in Federal Rule of Civil Procedure 23(a).  The Court will appoint plaintiff Oscar Torres as class representative and plaintiff's counsel from the National Veterans Legal Services Program and the law firm Perkins Coie LLP as Class Counsel.

## IV.   CONCLUSION

Based on the foregoing, the Court will grant the motion for class certification and appointment of class counsel by separate order.

Date: _____10/27/21_____

Royce C. Lamberth
United States District Judge