## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**OSCAR D. TORRES**, on behalf of himself
and others similarly situated,

    *Plaintiffs,*

**v.**

**CARLOS DEL TORO**, in his official
capacity as Secretary of the Navy,

    *Defendant.*

Case No. 1:21-cv-306-RCL
\*FILED UNDER SEAL\*
10/5/22

## MEMORANDUM OPINION

From time to time, servicemembers in the United States Armed Forces are separated from

service due to medical disability.  The Department of Defense ("DoD") and the Navy have created

a system, consisting of two primary parts, to evaluate Navy servicemembers for disabilities that

render them unfit.  The first part is a "medical evaluation" of the servicemember for potentially

unfitting conditions.  If the Navy servicemember advances to the second part, he or she will be

subject to a "disability evaluation" and then, if applicable, a disability rating that affects benefits

upon separation.  Between 2016 and 2018, the Navy implemented a new procedure to govern this

process, called the "Properly Referred Policy."  That policy ensured that only conditions "properly

referred" by the medical evaluation phase would be considered during the disability evaluation

phase.  The Navy rescinded the Properly Referred Policy in 2018.  Sergeant Oscar Torres

subsequently filed this class-action lawsuit arguing that the Navy's policy unlawfully prevented

him and similarly situated servicemembers from receiving full consideration during their disability

evaluations.  He seeks declaratory and injunctive relief under the Administrative Procedure Act

("APA"), 5 U.S.C. § 706.  After considering the administrative record ("AR"), the applicable law,

and the parties' briefing, this Court will **GRANT** Mr. Torres's motion for summary judgment and **DENY** the Secretary of the Navy's motion for summary judgment.

## I.      BACKGROUND

This Court has already addressed at length the background facts, procedural history, and relevant statutes for this lawsuit. *See Torres v. Del Toro*, No. 1:21-cv-306 (RCL), 2021 WL 4989451, *1–4 (D.D.C. Oct. 27, 2021), ECF No. 36.  Therefore, the Court will only overview what is most directly relevant to the Court's decision on the cross-motions for summary judgment.

### A.  Overview of the Disability Evaluation System and Statutory Constraints

When a military servicemember is set to be discharged from service due to medical disability, Chapter 61 of Title 10 of the U.S. Code provides the general guidelines for the process that the servicemember is due.  Most of the details, however, are defined through rules generated by the Secretary of Defense and secretaries of the military services pursuant to Congressional authorization. *See* 10 U.S.C. §§ 1216, 1222(c).  The Disability Evaluation System ("DES"), created by the DoD, governs the process for servicemembers facing separation or retirement due to disability. AR 1942–1999.  That system involves several steps that together determine whether a servicemember is unfit to continue serving. *See id.*  The Navy has further built on the DoD's general DES framework with more specific procedures for servicemembers within the Navy's purview. *See* AR 2000–2300.

To enter the Navy's DES, a servicemember is referred by a commanding or medical officer for medical evaluation. *See* AR 1967–70, 2054–56.  That referral is memorialized in Department of Veterans Affairs ("VA") Form 21-0819. AR 370–71, 2335.  VA Form 21-0819 contains a section for a referrer to list medical conditions for which the servicemember is being referred as well as a section for the servicemember to list additional claimed conditions. AR 370–72, 2335.

From there, the servicemember has entered the DES process.  A diagram of the usual DES

timeline is provided by the DoD.

ENCLOSURE 8

IDES TIMELINE

Figure.  IDES Timeline



AR 2371.

During the medical evaluation phase of the DES process, a Medical Evaluation Board

("MEB"), comprising two or more physicians, assesses the servicemember's individual

conditions and combination of conditions to decide whether to refer the servicemember to the

physical evaluation board (sometimes referred to as "PEB") phase.  *See* AR 1957–59, 2308; Pl.'s

Mem. 1.  If a servicemember is referred by the MEB, the first step of the physical evaluation

board phase is an Informal Physical Evaluation Board ("IPEB").  AR 2371.  The IPEB makes an

initial assessment of whether a servicemember is unfit for continued naval service.  AR 1959,

3

2027.  That determination is based on a records review, and the IPEB's "preliminary finding[will] become the PEB final determination upon a finding of Fit to continue naval service or upon waiver of the hearing right by the member."  AR 2027  Servicemembers who are found unfit by the IPEB may subsequently request a Formal Physical Evaluation Board ("FPEB") hearing to contest the findings, including the disability rating assigned to them.  *See* AR 1959–60.

If either the IPEB or FPEB concludes that a servicemember is unfit for continued military service, it will also assign a disability rating to the servicemember.  The level of disability rating determines the payment that a servicemember receives after separation.  *See Schmidt v. Spencer*, 319 F. Supp. 3d 386, 389 n.1 (D.D.C. 2018), *aff'd sub nom. Schmidt v. McPherson*, 806 F. App'x 10 (D.C. Cir. 2020).  A 0% to 20% rating will result in a "medically separated" designation leading to a one-time lump sum disability severance payment.  *See* 10 U.S.C. §§ 1203, 1212.  A 30% or greater rating will result in a "medically retired" designation.  *See id.* §§ 1201, 1203.  A medically retired individual receives monthly disability payments as well as certain rights for the servicemember and family members.  *See id.*  When determining a disability rating, the FPEB and IPEB must consider what combination of the servicemember's medical conditions, if any, merit a combined disability rating.  AR 1972–73.

Congress has also imposed both general and specific statutory requirements on the DES process.  For example, the relevant statute requires a "full and fair hearing" if requested by the servicemember.  10 U.S.C. § 1216.  Additionally, "[t]he Secretary concerned" in a determination of disability is directed to consider "*all* medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating."  10 U.S.C. § 1216a(b) (emphasis added).  And of particular relevance to the Court's decision is a statutory requirement that Congress imposed to govern the conduct of physical evaluation boards.

> **Response to applications and appeals.**--The Secretary of each military department shall ensure, in the case of any member of the armed forces appearing before a *physical evaluation board* under that Secretary's supervision, that documents announcing a decision of the board in the case convey *the findings and conclusions of the board in an orderly and itemized fashion with specific attention to each issue presented by the member in regard to that member's case*. The requirement under the preceding sentence applies to a case both during initial consideration and upon subsequent consideration due to appeal by the member or other circumstance.

10 U.S.C. § 1222(a) (emphases added).

### B.  The Navy's Properly Referred Policy

The present lawsuit arises from the Navy's Properly Referred Policy.  The Navy created the policy in order to limit the range of conditions that the IPEB and FPEB would need to consider at the physical evaluation board phase of the DES.  *See* AR 3, 20–24.  Specifically, the Navy instructed the IPEB and FPEB to "only assess conditions that have been properly referred by an MEB."  AR 21.  That meant medical conditions presented by a servicemember at the physical evaluation board stage would "not be considered" unless the medical conditions were:

> (i) specifically addressed in a MEB report, narrative summary, or Medical Addendum;
>
> (ii) supported by a VA disability examination; and
>
> (iii) appearing on a single Navy Medical Department ("NAVMED") form (Form 6100) used by the MEB, dated and signed by the authority convening the disability review.

AR 21–22.  As the Secretary explains, "[a]ny medical conditions that the MEB did not find to be individually or collectively unfitting" would not be properly referred and thus "were not considered by the PEB."  Def.'s Mem. 1.  Therefore, conditions presented by a servicemember on an early VA Form 21-0819 would not be considered by the IPEB or FPEB if the MEB decided not to "properly refer" those conditions.  *See* Def.'s Mem. 5–6; AR 54–56.

Oscar Torres's case well illustrates the effect of the challenged policy.  Mr. Torres's DES process began with a referral by his medical provider for chronic low back pain, sacroiliitis (inflammation of the sacroiliac joint), and spondyloarthropathy (inflammatory rheumatic disease). AR 380.  In addition to those conditions identified by his referrer, Mr. Torres also added twenty-five conditions to his VA Form 21-0819. AR 372.  Mr. Torres was subsequently evaluated by the MEB, which properly referred only two conditions to the physical evaluation board phase: sleep apnea and spondyloarthropathy.  AR 374–78.  The remaining conditions were not referred because they were found to be fitting.  AR 375–77.  Evaluating only those two referred conditions, the IPEB rated him unfit based on spondyloarthropathy at a 10% disability level and found his sleep apnea fitting.  AR 141–42.  Mr. Torres then requested an FPEB and argued that his combined disability rating should be at least 30%—enabling the benefits associated with a medically retired designation—because of his spondyloarthropathy alongside additional conditions previously raised.  AR 175, 282.  Nevertheless, the FPEB assigned him a 10% rating for spondyloarthropathy alone, because the other conditions "were not properly referred and were [thus] not considered by the Formal PEB." AR 137–40.

The Navy canceled the Properly Referred Policy in June 2018, without providing general relief to those who claimed that the policy resulted in the wrongful denial of medical retirement. AR 2, 5–6, 50; Def.'s Mem. 7.

### C.  Oscar Torres's Class-Action Lawsuit

Mr. Torres filed this class-action lawsuit, under the APA, arguing that the Properly Referred Process led to a "depriv[ation] of the disability retirement and pay and benefits to which he is entitled" and to which similarly situated class members are entitled.  Pl.'s Compl. ¶¶ 98, 102, 107–08, ECF No. 1.

In October 2021, this Court certified a class of the following people:

> All veterans of the United States Navy and Marine Corps whose final Physical Evaluation Board occurred between September 12, 2016 and June 11, 2018 who claimed additional conditions in the applicable section of the joint DOD/VA claim form (VA Form 21-0819)* that were not listed on the last-dated NA VMED Form 6100/1 signed by the Convening Authority and who did not receive a medical retirement through the IDES.
>
> *For example, Section III, Item 11 on VA Form 21-0819 (Oct 2009); and Section III, Item 8 on VA Form 21-0819 (June 2009).

*Torres*, 2021 WL 4989451 at *9. Mr. Torres moved for summary judgment. Pl.'s Mot., ECF No. 45; Pl.'s Mem. in Supp. ("Pl.'s Mem."), ECF No. 50. The Secretary of the Navy ("the Secretary") filed a cross-motion for summary judgment. Def.'s Mot., ECF No. 46; Def.'s Mem. in Supp. ("Def.'s Mem."), ECF No. 47-1. Mr. Torres filed a reply in support of his summary judgment motion and opposition to the defendant's cross-motion for summary judgment. Pl.'s Reply, ECF No. 58. And finally, the Secretary replied. Def.'s Reply, ECF No. 65. These motions are now ripe for review.

## II.    LEGAL STANDARDS

When plaintiffs are "seeking review of an agency's actions, the [typical summary judgment] standard under Fed. R. Civ. P. 56(a) does not apply." *Beyond Nuclear v. Dep't of Energy*, 233 F. Supp. 3d 40, 47 (D.D.C. 2017). Instead, a court must decide "as a matter of law whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Coe v. McHugh*, 968 F. Supp. 2d 237, 240 (D.D.C. 2013). Summary judgment in such cases is favored. *See Zemeka v. Holder*, 963 F. Supp. 2d 22, 24 (D.D.C. 2013). And this Court "sits as an 'appellate tribunal'" with the purpose of "answer[ing] the[] legal questions based on the evidence in the administrative record." *Truitt v. Kendall*, 554 F. Supp. 3d

167, 174 (D.D.C. 2021) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).

The APA provides the bedrock principles and standards by which a court will review the lawfulness of agency actions. *See* 5 U.S.C. § 706. Under the APA, a court shall "hold unlawful and set aside agency action, findings, and conclusions" that are, as plaintiffs[1] allege, "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" *id.* § 706(2)(C), "without observance of procedure required by law;" *id.* § 706(2)(D), or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *id.* § 706(2)(A).

"[C]laims that [agency action or] challenged regulations are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right [are] reviewed under the well-known *Chevron* framework." *Ass'n of Priv. Sector Colleges & Universities v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012) (internal quotation marks and citation omitted) (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)); *see also Children's Hosp. Ass'n of Texas v. Azar*, 933 F.3d 764, 769 (D.C. Cir. 2019). Under *Chevron*, a court will generally first consider whether a statute is ambiguous and, if it is ambiguous, whether the agency has provided a reasonable interpretation of the statute's meaning. *See Chevron*, 467 U.S. at 842–43.

When agency action is challenged as being "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), a court must determine whether the action challenged was in accordance with procedural regulations and statutory requirements. *See Nat'l Ass'n of Broadcasters v. Copyright Royalty Tribunal*, 675 F.2d 367, 384–85 (D.C. Cir. 1982).

Finally, under the arbitrary and capricious standard, a court reviews an agency's reasoning in a way that is "narrow and a court is not to substitute its judgment for that of the agency." *Motor*

---

[1] For ease of reference, this Court will refer to Mr. Torres and the class members collectively as "plaintiffs."

*Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983); *Jackson v. Mabus*, 808 F.3d 933, 936 (D.C. Cir. 2015); *Stewart v. Spencer*, 344 F. Supp. 3d. 147, 153 (D.D.C. 2018) (suggesting that the Navy is owed an even more deferential standard of review for its reasoning), *aff'd sub nom. Stewart v. McPherson*, 955 F.3d 1102 (D.C. Cir. 2020)).  However, when the government violates a statutory mandate, it has definitionally failed to act in accordance with law and its action should be set aside.  *See E. Band of Cherokee Indians v. Dep't of the Interior*, 534 F. Supp. 3d 86, 97 (D.D.C. 2021) ("Agency action is obviously 'not in accordance with law' if it violates some extant federal statute or regulation."), *appeal dismissed*, No. 21-5114, 2022 WL 102544 (D.C. Cir. Jan. 5, 2022).

Here, all three avenues for review of the Properly Referred Policy boil down to a basic question: did the Secretary comply with statutory requirements set by Congress?

### III.   DISCUSSION

Plaintiffs argue that the Navy's application of the Properly Referred Policy failed to comply with several statutory requirements, including 10 U.S.C. § 1222(a), which sets forth specific procedures that a "physical evaluation board" must follow.  The Court's analysis begins and ends there.  § 1222(a)'s command unambiguously conflicts with the procedure plaintiffs were provided under the Properly Referred Policy.  Accordingly, the Court will set aside the physical evaluation board decisions for each class member.

### A.  The Properly Referred Policy Violated § 1222(a)

When plaintiffs challenge the lawfulness of an agency policy or action pursuant to a statutory directive, the reviewing court will often apply *Chevron* deference as part of its analysis. *See Ass'n of Priv. Sector Colleges & Universities*, 681 F.3d at 441.  The Secretary does not argue for *Chevron* deference in his briefing, although that does not necessarily deprive him of such deference.  *See SoundExchange, Inc. v. Copyright Royalty Bd.*, 904 F.3d 41, 54 (D.C. Cir. 2018).

9

But "[a court] need not decide whether *Chevron* deference applies []when the relevant terms []read in context[] are unambiguous."[2]  *Truck Trailer Manufacturers Ass'n v. EPA*, 17 F.4th 1198, 1201 & n.1 (D.C. Cir. 2021).  A statute is unambiguous when "the intent of Congress is clear."  *Chevron*, 467 U.S. at 842.  Whether Congress unambiguously expressed its intent can be resolved by reference to "the statute's text, structure, and context."  *Truck Trailer Manufacturers Ass'n*, 17 F.4th at 1201.

The statute in question stems from the John Warner National Defense Authorization Act for Fiscal Year 2007, through which Congress added "Procedural Requirements" for "[p]hysical evaluation boards."  Pub. L. No. 109–364, § 597, 120 Stat. 2083 (2006).  That statute requires "in the case of any member of the armed forces appearing before a physical evaluation board . . . that documents announcing a decision of the board in the case convey the findings and conclusions of the board in an orderly and itemized fashion *with specific attention to each issue presented by the [service]member in regard to that member's case*."  10 U.S.C. § 1222(a) (emphasis added); *see* Pl.'s Mem. 20; Pl.'s Reply 5.  Furthermore, that "requirement . . . applies to a case both during initial consideration and upon subsequent consideration due to appeal by the member or other circumstance."  10 U.S.C. § 1222(a).

The statute is unambiguous.  It directs the Secretary of the Navy, like the secretary of every other military department, to ensure that decisions of "a physical evaluation board . . . convey the findings and conclusions of the board in an orderly and itemized fashion with specific attention to

---

[2] For additional reasons, it is unlikely that the Secretary could receive *Chevron* deference on this issue.  *See, e.g.*, *Kaufman v. Nielsen*, 896 F.3d 475, 483 (D.C. Cir. 2018) ("[W]e generally do not apply Chevron deference when the statute in question is administered by multiple agencies."); *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1285 n.15 (1st Cir. 1996) ("We note that the two-step process articulated in [*Chevron*] does not apply here, because we are not reviewing an agency's interpretation of the statute that it was directed to enforce.").  Furthermore, it is not clear that any of the relevant agency action or policies here were "promulgated in the exercise of []authority" that was "delegated authority to the agency" pursuant to, or related to, § 1222(a).  *See Kaufman*, 896 F.3d at 483 (internal quotation marks omitted) (quoting *Gonzales v. Oregon*, 546 U.S. 243, 255–56 (2006)).

each issue presented by the member in regard to that member's case." *Id.* The Properly Referred Policy, by contrast, ensured that no physical evaluation board, formal or informal, would pay specific attention to each issue presented by a servicemember. A condition intentionally presented by a servicemember, but not properly referred by the MEB, would simply "not be considered" by the relevant physical evaluation board. AR 20–24.

Each plaintiff here presented at least one condition on VA Form 21-0819 that was not properly referred by the MEB. *See Torres*, 2021 WL 4989451 at *9; *see, e.g.*, AR 140. The unreferred conditions "were not considered by the PEB because they were not 'properly referred' by the MEB." *See* Def.'s Mem. 1. Mr. Torres's case helps to illustrate the result of this process. "[T]he PEB properly limited review to Mr. Torres's two MEB-referred conditions." *Id.* at 20. And, in accordance with that limited review, the FPEB's formal rationale in this case stated that "[t]he Board determined BILATERAL PLANTAR FASCIITIS, LEFT ANKLE CONDITION, and RIGHT ANKLE CONDITION were not properly referred and were not considered by the Formal PEB." AR 140. Therefore, by design, the Properly Referred Policy ensured that neither the IPEB nor the FPEB gave specific attention, in an orderly and itemized fashion, to each issue presented by Mr. Torres and the other plaintiffs.[3]

Indeed, the Secretary does not argue that the IPEB and FPEB, standing alone, provided specific attention within the requirement of § 1222(a). Instead, he claims that the IPEB and FPEB did not need to "take into account all medical conditions" because the MEB had already done so. *See* Def.'s Mem. 1 (quoting 10 U.S.C. § 1216a(b)). The Secretary posits that "the MEB is 'a physical evaluation board under th[e] Secretary's supervision' that 'convey[s] the findings and

---

[3] Given that the statute is unambiguous, the mere fact that there is statutory authority to generate regulations cannot save the Navy's Properly Referred Policy. *See* 10 U.S.C. § 1216(a); *id.* § 1222(c)(1). The power to promulgate never overcomes clear statutory text. *See Bergman v. Paulson*, 555 F. Supp. 2d 25, 31 (D.D.C. 2008) ("It is hornbook law that a regulation that is clearly inconsistent with the plain meaning of a statute is invalid.").

conclusions of the board in an orderly and itemized fashion with specific attention to each issue presented by the member in regard to that member's case.'"  *Id.* at 15 (alternations in original) (quoting 10 U.S.C. § 1222(a)).  Then, "because the MEB had already addressed *all* conditions, the PEB was not required to reissue findings and conclusions for non-referred conditions."  *Id.* (emphasis in the original).

The Secretary's argument rests on two propositions: first, that the MEB is a physical evaluation board under the Secretary's supervision; and second, that, because the MEB is a physical evaluation board, its review of each issue presented satisfied § 1222(a).

In arguing that the MEB is a physical evaluation board—despite there being a separate entity specifically called a physical evaluation board—the Secretary simply cites § 1222(a) and pages 374 through 378 of the administrative record.  *See* Def.'s Mem. 15.  But § 1222(a) never uses the term "Medical Evaluation Board" or "MEB" and merely refers to "a physical evaluation board under that Secretary's supervision."  And the referenced pages of the administrative record solely contain Mr. Torres's MEB Narrative Summary.  It is unclear why either of those sources would demonstrate that the MEB is a physical evaluation board under the statute.

Moreover, the MEB does not perform the same functions as a physical evaluation board. In fact, DoD documents specifically differentiate the two.  Under DoD Directive 1332.18, the DES consists of different parts.  One is "[m]edical evaluation to include the MEB, impartial medical reviews, and rebuttal."  AR 1956.  Another is "[d]isability evaluation to include the PEB and appellate review, counseling, case management, and final disposition."  *Id.*  This difference can be seen clearly in the previously referenced DoD timeline chart for the process.  *See infra* Part I.A.; AR 2371.  The separation between the "Medical Evaluation Board Phase" and the "Physical Evaluation Board Phase" is starkly presented in beige and brown.  AR 2371; *see also* Def.'s Mem.

4 (noting that "the Navy's disability rating process has three phases" and separating out the MEB phase from the physical evaluation board phase).

There is a conceptual distinction that underlies this illustrative distinction.  As the Secretary explains, "[t]he MEB's purpose is to review the service member's referred and claimed conditions and send potentially unfitting conditions to the PEB."  Def.'s Mem. 4.  The MEB will "state whether each condition is cause for *referral to a PEB*."  AR 1959 (emphasis added).  By contrast, "PEBs determine the fitness of Service members with medical conditions to perform their military duties and . . . their eligibility for benefits."  *Id.*  Therefore, "the PEB's function is distinct from the MEB."  Def.'s Mem. 5.  And this separation is what made the Navy's creation of the Properly Referred Policy plausible in the first place.  The MEB was made a gatekeeper for referral to a physical evaluation board.  *See* Def.'s Mem. 8 ("The Secretary of Defense established the MEB as the 'gatekeeper' for the PEB." (quoting AR 57)); AR 1959.  It is therefore a completely different part of the DES.  The MEB may generate a "referral to a PEB," AR 1959, but it is not a physical evaluation board.

Finally, if the DoD documents, the Secretary's own briefing, and the conceptual distinctions were not enough, Congress has subsequently made clear that the MEB is separate from a physical evaluation board.  In the National Defense Authorization Act for Fiscal Year 2013, Congress created quality review requirements for the Secretary of Defense.  Pub. L. No. 112–239, § 524, 126 Stat. 1632 (2013).  In so doing, Congress directed the Secretary of Defense to "standardize, assess, and monitor the quality assurance programs of the military departments" for "(1) Medical Evaluation Boards. (2) Physical Evaluation Boards."  *Id.*; *see also id.* ("The objectives of the quality assurance program shall be as follows: (1) To ensure accuracy and consistency in the determinations and decisions of Medical Evaluation Boards and Physical

Evaluation Boards."). Congress's own separation of MEBs from physical evaluation boards, in legislation passed before the Properly Referred Policy came about, "puts extra icing on a cake already frosted." *Yates v. United States*, 574 U.S. 528, 557 (2015) (Kagan, J., dissenting).

Because the MEB is not a physical evaluation board, the application of the Properly Referred Policy to the plaintiffs in this action was unlawful. The class members here all "claimed additional conditions" that went unaddressed by a physical evaluation board because they were not properly referred. *See Torres*, 2021 WL 4989451 at *9; AR 140. Therefore, the "documents announcing a decision of the [physical evaluation] board in the[ir] case[s]" did not "convey the findings and conclusions of the board in an orderly and itemized fashion with specific attention to each issue presented by the [service]member[s] in regard to that member's case." *See* 10 U.S.C. § 1222(a). As the FPEB decision in Mr. Torres's case explained: "The Board determined [several conditions raised by Mr. Torres] were not properly referred and were not considered by the Formal PEB." AR 140. Both the IPEB and FPEB did not consider the conditions raised by Mr. Torres, nor give them special attention—just as they failed to do for at least one medical condition presented by each class member in this action. *See* AR 20–24, 171; Def.'s Mem. 5 ("[B]oth the IPEB and FPEB limit their findings and conclusions to the MEB-referred conditions."). And because the MEB is not a physical evaluation board, no opinion of a physical evaluation board ever addressed, with specific attention, each issue raised by the servicemembers in this class. That failure violated the unambiguous statutory requirement imposed by Congress.[4]   Indeed, § 1222(a)'s language appears designed to prevent the exact policy the Navy implemented here.

---

[4] Even if the MEB were a physical evaluation board, the Secretary's argument would still fail. § 1222(a) requires that the "specific attention" requirement be applied during both the "initial consideration of a case" and "upon subsequent consideration due to appeal by the member or other circumstance." Neither party pays that language much heed, but it speaks for itself. If the MEB is in fact a physical examination board, its role is to decide whether conditions should be referred because they are "potentially unfitting." Def.'s Mem. 4; AR 1959, 2308. The IPEB and FPEB then provide

\*   \*   \*

The creation of the Navy's Properly Referred Policy was rooted in the noble goal of efficient government administration. Nevertheless, that proper objective of good government must yield in the face of explicit Congressional instruction. Congress made a choice about the procedures due to the brave men and women in the United States Armed Forces. The Navy's Properly Referred Policy paid that instruction little heed and, as a result, thousands of servicemembers were treated improperly. Because the application of the Properly Referred Policy to the plaintiffs' physical evaluation board decisions violated § 1222(a), this Court need not consider their alternative arguments. The Secretary's actions were unlawful under 5 U.S.C. § 706(2)(A), (C), and (D).

**B.  The Physical Evaluation Board Decisions for Plaintiffs Must Be Vacated**

Given that the Properly Referred Policy subjected these plaintiffs to an unlawful procedure, the next step is to decide what remedy is appropriate. Absent extraordinary circumstances, a district court reviewing agency action should set aside the action it has found unlawful and then remand to the agency for next steps consistent with the clarified legal standard. *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005); *N. Air Cargo v. USPS*, 674 F.3d 852, 861 (D.C. Cir. 2012); *see also Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952). That principle stems from the special role "a district court reviewing a final agency action" plays "as an appellate tribunal." *Palisades General Hosp. Inc.*, 426 F.3d at 403 (internal quotation marks omitted) (quoting *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999)).

---

subsequent consideration of the servicemember's case. And under § 1222(a), those subsequent physical evaluation boards are bound by the same "specific attention" requirement as the MEB. Merely referring back to the findings of a prior physical evaluation board—if the MEB were indeed one—is not "an orderly and itemized fashion with specific attention to each issue presented by the member in regard to that member's case." *See* 10 U.S.C. § 1222(a).

Since the Properly Referred Policy violated § 1222(a)'s requirement for the "documents announcing a decision of the board in [a servicemember's] case" this Court will order that the physical evaluation board decisions for each class member be set aside as unlawful. Arguing for more, plaintiffs ask this Court to fashion an injunction to guarantee "members the procedural rights they were always due." Pl.'s Reply 14. They cite to two paths through which a Court might properly enjoin a defendant-agency rather than merely set aside as unlawful the challenged actions. First, when "a less drastic remedy is insufficient to redress the plaintiff's injury." *Id.* at 13. And second, when "there is only one rational course for the agency to follow upon remand." *Id.* For the first path plaintiffs cite a government contracting case in which the court concluded that recission and award of a disputed contract might be the only remedy that could truly satisfy plaintiff's injury. Pl.'s Reply 13 (citing *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 386 (D.D.C. 2017)). For the second, plaintiffs look to a case where plaintiffs in an immigration matter were already under unlawful orders of removal, or were unlawfully removed, necessitating immediate action. Pl.'s Reply 14 (citing *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 57–58 (D.D.C. 2020), *appeal dismissed sub nom. Kiakombua v. Mayorkas*, No. 20-5372, 2021 WL 3716392 (D.C. Cir. July 19, 2021)). Neither special circumstance, however, is applicable to this case.

Once this Court sets aside the defective physical evaluation board decisions, plaintiffs' procedural injuries from the violation of § 1222(a) will be remedied. From there, of course, the Navy must take new action for plaintiffs under the appropriate legal framework. *See* Part III.A. This Court will trust—as courts do in the regular course of judicial review of agency actions—that that the Secretary will properly follow Congress's commands and Navy regulations to fashion a remedial PEB process for the class members. And while it is without question that the Secretary will need to follow the procedural constraints that bind him, there are indeed a range of different

16

options available that could comply with § 1222(a) and other legal requirements.  Accordingly, this Court will not issue an injunction.

## IV.    CONCLUSION

Based on the reasoning above, this Court will **GRANT** Mr. Torres's motion for summary judgment and **DENY WITH PREJUDICE** the Secretary of the Navy's motion for summary judgment.  The Court will enter judgment in favor of Mr. Torres and declare that the Properly Referred Policy, administered between September 12, 2016 and June 11, 2018, was unlawful in its effect on the physical evaluation board decisions for Mr. Torres and the class members.  The Court will further **VACATE** and **SET ASIDE** the physical evaluation board decisions for each class member and **REMAND** to the Secretary of the Navy for further proceedings consistent with relevant law.  A separate order will issue.

Date: September 2, 2022

Royce C. Lamberth
United States District Judge

17